UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION-BAY CITY

In Re:

Alpena Collision Service, Inc.,

        Debtor.

_____/

Case No. 13-21731
Chapter 11 Proceedings
Honorable Daniel Opperman

## DEBTOR'S COMBINED CHAPTER 11 PLAN AND DISCLOSURE STATEMENT

## I.  INTRODUCTION

NOW COMES the Debtor in the above-captioned matter ("Debtor"), by and through its counsel, LAMBERT LESER and proposes the following Combined Chapter 11 Plan and Disclosure Statement (the "Plan") in accordance with 11 U.S.C. § 1121(a).  Pursuant to an Order of the Court, the Disclosure Statement may be combined with the Plan into one document as set forth herein, and the hearing regarding approval of the Disclosure Statement and the hearing regarding confirmation of the Plan shall be combined.

This case was filed as a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Code") on June 26, 2013.  The Debtor is authorized to continue to operate its business, as a debtor-in-possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No request for appointment of a Chapter 11 trustee or examiner has been made.  An official committee of unsecured creditors has not been appointed.

This Plan is a plan of liquidation and not of reorganization.  The Debtor's proposed Plan payments to creditors are based upon the sale of assets and a relatively small amount set aside for payment to unsecured creditors as described below.  The Debtor obtained approval to sell most of its assets pursuant to Order Granting Debtor's Motion to (i) Approve Procedures for the Sale of

{00226875}

Debtor's Real Property Located in Alpena, Michigan; (ii) Approve the Sale of the Assets Free And Clear of all Liens, Claims, and Encumbrances; (iii) and Scheduling Sale Approval Hearing [Docket No. 65](the "Sale Order"). The sale has not been concluded and the purchaser has not informed the Debtor that it does not intend to close the transaction. The Debtor will continue to market the property and assets.

The distribution projections and other information in this Plan are estimates only, and the timing and amount of actual distributions to allowed claim holders may be affected by many factors that cannot be predicted. Therefore, any analyses, estimates, or recovery projections may or may not turn out to be accurate. Claims holders may not rely on this Plan for, and this Plan does not provide, any legal, financial, regulatory, tax, or business advice. The Debtor urges each claim holder to consult with its own advisors with respect to any such legal, financial, regulatory, tax, or business advice in reviewing this Plan.

## II. DEFINITIONS

For purposes of this Plan, except as expressly provided otherwise or unless the context requires otherwise, all capitalized terms not otherwise defined shall have the meanings set forth herein. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning set forth in the Bankruptcy Code or the Bankruptcy Rules.

1.    "**Administrative Claim**" means a claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority pursuant to Section 507(a)(2) of the Bankruptcy Code, including, but not limited to, the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estate and operating the businesses of the Debtor, including wages, salaries, or commissions for services rendered after the Petition

{00226875}2

Date, professional fees, all fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, and all allowed claims that are entitled to be treated as Administrative Claims pursuant to a final order of the Bankruptcy Court.

2. "**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as applicable in this Chapter 11 case.

3. "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of Michigan, Northern Division, or such other court as may have jurisdiction over this Chapter 11 case.

4. "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 case or proceedings therein, as the case may be.

5. "**Bar Date**" means the deadlines established by the Bankruptcy Court for filing proofs of claim in the Chapter 11 case, as the context may require.

6. "**Confirmation Date**" means the date 14 days after entry of the Confirmation Order.

7. "**Confirmation Hearing**" means the hearing before the Bankruptcy Court, held under Section 1128 of the Bankruptcy Code, to consider confirmation of this Plan and related matters, as such hearing may be adjourned or continued from time to time.

8. "**Confirmation Order**" means the order entered by the Bankruptcy Court confirming this Plan under Section 1129 of the Bankruptcy Code.

9. "**Debtor**" means the debtor identified in the caption to this pleading.

{00226875}3

10.  **"Effective Date"** means the date upon which the Order Confirming Plan becomes a final non-appealable Order.

11.  **"Estate"** means the bankruptcy estate of the Debtor created pursuant to Section 541 of the Bankruptcy Code.

12.  **"Petition Date"** means June 26, 2013, the date the Debtor filed its petition for reorganization relief in the Bankruptcy Court.

13.  **"Plan"** means this Combined Chapter 11 Plan and Disclosure Statement as herein proposed by the Debtor including any Plan Supplement, all exhibits, and schedules thereto, either in its or their present form or as the same may be further altered, amended, or modified from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

14.  **"Liquidating Debtor"** means the Debtor as liquidated after the Confirmation Date pursuant to the provisions of this Plan.

15.  **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed in this Chapter 11 case by the Debtor, as such schedules or statements have been or may be further modified, amended, or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

## III. DEBTOR'S PLAN OF REORGANIZATION

### A.     Classification of Claims and Interest

Class 1     Administrative claims for professional's fees and other administrative claims to the extent filed and allowed.

Class 2     Priority claims of the Michigan Department of Treasury and the Internal Revenue Service to the extent allowed.

{00226875}4

| Class 3 | Secured claims of the Internal Revenue service in the claimed amount of $172,623.85 to the extent allowed. |
|---------|------------------------------------------------------------------------------------------------------------|

Class 3     Secured claims of the Internal Revenue service in the claimed amount of $172,623.85 to the extent allowed.

Class 4     Secured claim of the Michigan Department of Treasury in the claimed amount of $24,644.50 to the extent allowed.

Class 5     Secured claim of the State of Michigan Unemployment Insurance Agency in the claimed amount of $1,694.36 to the extent allowed.

Class 6     Secured claim of Rose Acceptance in the claimed amount of $81,114.85 to the extent allowed.

Class 7     General unsecured claims and any portions of other claims asserted as priority or secured which are entitled to unsecured treatment against the Estate that were timely filed, to the extent the same are allowed, approved, and ordered paid by the Court.

Class 8     The equity interests in the Debtor.

**B.**     **Treatment of Classes under the Plan**

Class 1 – Administrative Claims for Professional Fees and other Administrative Claims.

Treatment: Debtor's counsel holds an administrative claim against the Estate on account of unpaid attorney fees in an amount in excess of $15,000, as of April 28, 2014. It is anticipated that this amount will continue to increase. The Internal Revenue Service and the State of Michigan have filed administrative claims that total $11,157.22. The administrative claimants shall be paid from sale proceeds after payment to secured creditors. .

Class 2-Priority Claims.

- The Claims in this class shall be paid from available sale proceeds after distributions to secured creditors and administrative claimants.

Class 3-Secured Claim of the Internal Revenue Service.

{00226875}5

- The Internal Revenue Service shall receive distributions to the extent of available sale proceeds and to the extent of its allowed portion of its claim from sale proceeds.

Class 4-Secured Claims of the Michigan Department of Treasury.

- The Michigan Department of Treasury shall receive distributions to the extent of available sale proceeds and to the extent of its allowed portion of its claim from sale proceeds.

Class 5-Secured Claims of State of Michigan Unemployment Insurance Agency.

- The State of Michigan Unemployment Insurance Agency shall receive distributions to the extent of available sale proceeds and to the extent of its allowed portion of its claim from sale proceeds.

Class 6- Secured Claims of Rose Acceptance.

- Rose Acceptance shall receive distributions to the extent of available sale proceeds and to the extent of its allowed portion of its claim from sale proceeds.

Class 7 – General Unsecured Claims

- Treatment: General unsecured creditors will be paid on a pro rata basis from available sale proceeds after distribution to Classes 1-6.. The only other potential source of funding for this class is the possibility of recoveries on the litigation detailed further in this Plan and preference recoveries, if any.

Class 8 – Equity Interests

- Treatment: The Debtor is organized as a collective of farmers and other interested parties as owners. As this is a plan of liquidation, none of the Debtor's equity interests will be entitled to recover under the Plan.

- Voting: This class is unimpaired under the Plan

{00226875}6

**C.    Impaired Classes under the Plan**

Under Section 1126(c) of the Bankruptcy Code, and except as otherwise provided in Section 1126(e) of the Bankruptcy Code, an impaired class of claims has accepted the Plan if the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in such class actually voting have voted to accept the Plan. Classes 3, 4, 5 and 7 are impaired under the Plan. Since the Class 6 claim holds a first priority lien, the allowed portion of its claim will be paid in full and is therefore unimpaired.

**D.    Payment of U.S. Trustee's Fees**

Immediately upon Confirmation of this Plan, the Debtor will pay all fees due and owing to the U.S. Trustee's Office which have been incurred up to that date, but have not been paid. The Debtor shall serve upon the U.S. Trustee post-confirmation receipt and disbursement reports on a monthly basis, until such time as the case is closed with the Court. The Debtor shall continue to pay quarterly fees to the U.S. Trustee on a timely basis until such time as the case is closed with the Court.

**E.    Executory Contract and Unexpired Lease Assumption and Rejection**

There is currently an executory contract with Schwan's to which the Debtor was a party. The Debtor shall assume and assign the contract or reject the contract depending upon the request of the purchaser of the Debtor's assets.

**F.    Collective Bargaining Agreements**

There are no collective bargaining agreements to be assumed or rejected.

**G.    Supplements to the Plan**

{00226875}7

Prior to confirmation the Debtor may file amendments and/or supplements to this Plan which shall be incorporated by reference into this Plan or such amended Plan as the Debtor may file and shall be binding on all creditors and interested parties.

## IV.    DESCRIPTION OF DEBTOR AND CAUSES OF BANKRUPTCY

### A.    The Debtor

The Debtor operated a car repair, rental and body shop in Alpena, Michigan. Due to health conditions of the principal of the Debtor, the Debtor will sell its assets and cease operating. The Debtor owns two parcels in Alpena, Michigan. One parcel is the shop where the Debtor operates and the other is a vacant lot located at 111 Elizabeth Street, Alpena, Michigan. .

### B.    Principals

The Debtor is operated and managed by Mick Lemieux.

### C.    Primary Causes of Bankruptcy

The primary cause of the Debtor's bankrtucy was the Debtor's inability to make payments on its mortgage and other debts as a result declining health and declining operations due to various economic factors.   This Chapter 11 was filed in an effort to stop a foreclosure and give the Debtor an opportunity to sell the assets and distribute proceeds to the Creditors.

## V.    POST-PETITION EVENTS OF SIGNIFICANCE

The following contains an overview of certain events occurring after the Chapter 11 filing, including the administration of the Chapter 11 case and the sale of substantially all of the Debtor's assets.

### A.    Filing the Chapter 11 Case Petitions

This case was filed as voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 26, 2013.   The Debtor was authorized to continue to operate its businesses and manage its

{00226875}8

properties as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No request for appointment of a Chapter 11 trustee or examiner has been made. An official committee of unsecured creditors has not been appointed.

**B.      Business Continuation; Litigation Stay**

The Debtor's chapter 11 filing immediately gave rise to the Bankruptcy Code's "automatic stay" which, with limited exceptions, enjoined commencement and continuation of all creditor collection efforts, litigation against the Debtor, and enforcement of liens against the Debtor's property. However, Rose Acceptance recently obtained relief from the automatic stay and will presumably pursue its remedies. The Debtor has continued to operate and the Sale Order was entered that allowed the Debtor to sell all assets. Unfortunately, the purchaser has now informed the Debtor that it does not intend to purchase the assets. The Debtor has listed the property and is seeking a new buyer.

**C.      Post-Petition Sales Outside the Ordinary Course of Business**

The Debtor filed its Chapter 11 petition in the hopes of finding a buyer for substantially all of its assets. It was hoped that the Debtor's facility could be sold for an amount sufficient to pay off its mortgage to Rose Acceptance (the "Bank") and allow for distribution to other creditors. To that end, the Debtor engaged in a marketing effort for its assets that culminated in a purchase agreement for $150,000 and an auction pursuant to the Sale Order. At the auction, no party bid more than $150.000. Unfortunately, the buyer has elected not to proceed with closing and now the Debtor is attempting to find a new buyer. Rose Acceptance also has a lien on other property for which the Debtor may have a buyer and which will likely pay all or substantially the entire claim of Rose Acceptance in full.

{00226875}9

**D. Litigation**

There has been no litigation in this case initiated by the Debtor. However, the Debtor does express reserve and retain the right to initiate or continue the following listed litigation on or after the Confirmation of this Plan:

- Potential litigation against Rose Acceptance based upon fraudulent conveyance, application of payments and/or claim determination.

- Potential litigation against The Internal Revenue Service and the Michigan Department of Treasury to determine the amount of their respective claims.

- At this point a preference analysis has not been completed. The Debtor may also pursue any preference, as well as object to any disputed claims.

## VI. LIQUIDATION ANALYSIS, ASSETS, LIABILITIES AND CLAIMS

**A. Liquidation Analysis**

As this is a liquidating plan, no Liquidation Analysis is needed for comparison purposes. Attached as Exhibit "A" is a copy of Schedule B filed with this Court that itemizes the personal property assets of the Debtor which likely have a liquidation value of less than $100,000. The Debtor believes the real estate now has a value of at least $150,000.

**B. Procedures for Resolving Disputed Claims**

<u>1.       Claims Administration</u>

The Debtor, shall be responsible for and shall retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving all claims against, and interests in, the Debtor and making distributions (if any) with respect to all claims and interests.

<u>2.       Filing of Objections</u>

{00226875}10

Unless otherwise provided in the Plan or extended by the Bankruptcy Court, any objections to claims and/or interests shall be served and filed on or before the date which is one hundred twenty (120) days after the Confirmation Date (the "Claims Objection Deadline"). Notwithstanding any authority to the contrary, an objection to a claim or interest shall be deemed properly served on the holder of the claim or interest if the Debtor or Liquidating Debtor, as the case may be, effect service in any of the following manners: (i) in accordance with Bankruptcy Rule 3007, (ii) to the extent counsel for a holder of a claim or interest is unknown, by first-class mail, postage prepaid, on the signatory on the proof of claim or other representative identified on the proof of claim or any attachment thereto (or at the last known addresses of such holders of claims if no proof of claim is filed or if the Debtor has been notified in writing of a change of address), or (iii) by first-class mail, postage prepaid, on any counsel that has appeared on behalf of the holder of the claim or interest in the Chapter 11 cases and has not withdrawn such appearance.

3. Claim Dispute Resolution Procedures

Resolution of disputes regarding claims shall be subject to the following parameters:

- If the settlement amount for a disputed claim is less than $5,000.00, the Liquidating Debtor shall be authorized to settle such claim or interest without the need for further Bankruptcy Court approval or further notice.

- If the settlement amount for a disputed claim is greater than or equal to $5,000.00, the Liquidating Debtor, shall file a proposed settlement stipulation with the Bankruptcy Court with notice and hearing consistent with the Local Rules and the Bankruptcy Rules.

- Settlement of any pre-petition controversies in these categories resulting in monetary claims against the Debtor shall be resolved solely by determination and allowance of a claim, subject to the requirements of the Plan.

{00226875}11

- Settlement of any postpetition controversies in these categories resulting in monetary claims against the Debtor or Liquidating Debtor may be resolved, where applicable, by the Liquidating Debtor, by an allowance of an administrative claim related to such settlement.

- The Liquidating Debtor is authorized to allow claims against the Debtor and its Estate, where the allowance of such Claims otherwise meets the requirements of the Plan.

- The Liquidating Debtor is authorized to allow claims with a specific priority and security status, where the allowance of such Claims otherwise meets the requirements of the Plan and does not in any way affect, whether as a prior or subordinated lien, the lien of any other party. For purposes of clarity and without limitation, the granting or recognition of a subordinated lien shall not be allowed, absent a Bankruptcy Court order, without the consent of all other lien holders with respect to the affected collateral.

4.    Determination of Claims

Any claim (or any revision, modification, or amendment thereof) determined and liquidated pursuant to (i) the procedures listed in this Plan, or (ii) a final order of the Bankruptcy Court shall be deemed an allowed claim in such liquidated amount and satisfied in accordance with the Plan, unless otherwise ordered by the Bankruptcy Court.

5.    Insider Settlements

Notwithstanding anything to the contrary in the Plan, any settlement that involves an insider, set forth at Section 101(31) of the Bankruptcy Code, shall be effected only in accordance with Bankruptcy Rule 9019(a).

6.    Ordinary Course of Business Exception

The applicable Plan provisions shall in no manner affect, impair, impede, or otherwise alter the right of the Debtor or Liquidating Debtor to resolve any controversy arising in the ordinary

{00226875}12

course of the Debtor's or Liquidating Debtor's business or under any other order of the Bankruptcy Court.

7.    Claims Bar Date

Except as provided in the Plan or otherwise agreed, any and all claims for which a proof of claim was filed after the applicable bar date shall be disallowed, expunged and forever barred as of the Confirmation Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such claims may not receive any distributions on account of such claims, unless on or before the Confirmation Date such late claims have been deemed timely filed by a final order.

8.    Amendments to Claims

On or after the Confirmation Date, except as provided herein, a claim may not be filed or amended without the prior authorization of the Bankruptcy Court, or Liquidating Debtor. To the extent any such claim is filed without such authorization, such claim shall be deemed to be a disallowed claim and expunged without any further notice to or action, order, or approval of the Bankruptcy Court or any other person.

## VII. EXECUTION AND IMPLEMENTATION OF PLAN

**A.    Financial Projections and Plan Payments**

Debtor's financial projections are not required in this matter due to the fact that this is a liquidating Plan.

The payments contemplated pursuant to this Plan shall be made within 5 business days of the closing of the sale of assets or as part of the closing. In the event a claim dispute exists for which an objection has been filed and not resolved at the time of closing, then available proceeds of sale shall be set aside and held in trust until the claim is determined. Nothing herein shall prohibit the Debtor

{00226875}13

from paying the portion that is not disputed prior to a full determination. It is anticipated that the claim of Rose Acceptance will be paid in full from the sale of other assets securing its claim since it is more likely a closing on the sale of such assets will occur prior to the sale of the Debtor's assets.

## B.    Continuation of Business

The business ceased most operations after the Petition Date and has operated only minimally since that time to maintain the business, the Schwan's agreement and the property and will continue to do so until the assets are sold.

## C.    Tax Ramifications

The Plan does not contemplate that there will be any tax ramifications as a result of this Plan.

## D.    Claim Discharge and Interest Termination

Pursuant to Section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, confirmation of the Plan and the distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Confirmation Date, of all claims and causes of action, whether known or unknown, against, liabilities of, obligations of, rights against, and interests in the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such claims, rights, and interests, including, but not limited to, claims and interests that arose before the Confirmation Date, any liability (including withdrawal liability) to the extent such claims relate to services performed by employees of the Debtor prior to the Petition Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Confirmation Date, all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim based upon such claim, debt, right, or interest is filed or deemed

{00226875}14

filed under Section 501 of the Bankruptcy Code, (b) a claim or interest based upon such claim, debt, right, or interest is allowed under Section 502 of the Bankruptcy Code, or (c) the holder of such a claim, right, or interest accepted the Plan, the Confirmation Order shall be a judicial determination of the discharge of all claims against and interests in the Debtor, subject to the occurrence of the Confirmation Date.

Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all persons that have held, currently hold, or may hold claims or interests that have been discharged or terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Liquidated Debtor or its property on account of any such discharged claims, debts, liabilities, or terminated interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability, or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place that does not comply, or is consistent, with the provisions of the Plan.

## E.  Plan Modification, Revocation, or Withdrawal

### 1.  Plan Modification and Amendment

Except as otherwise provided in the Plan, the Debtor may, from time to time, propose amendments or modifications to this Plan prior to the Confirmation Date, without leave of the Bankruptcy Court. Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modification set forth in this Plan, the Debtor expressly reserves its rights to revoke or withdraw, or to alter, amend or modify

{00226875}15

materially the Plan with respect to the Debtor, one or more times, after the Confirmation Date. After the Confirmation Date, the Debtor may, with leave of the Bankruptcy Court, and upon notice and opportunity for hearing to the affected creditor(s), remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Confirmation Order, or otherwise modify the Plan.

2.      Effect of Confirmation on Plan Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to Section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

3.      Plan Revocation or Withdrawal

The Debtor reserves the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent Chapter 11 plans. If the Debtor revokes or withdraws the Plan, or if Confirmation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any claim or interest or class of claims or interests), assumption, assignment, or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (i) constitute a waiver or release of any claims, interests, or causes of action; (ii) prejudice in any manner the right of such Debtor or any other person; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other person.

**F.      Retention of Jurisdiction**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Confirmation Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to,

the Chapter 11 Cases and the Plan pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, including without limitation, jurisdiction to:

- Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any claim or interest, including the resolution of any request for payment of any administrative claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of claims or interests;

- Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to professionals authorized pursuant to the Bankruptcy Code or the Plan;

- Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any cure or claims arising therefrom, including cure or claims pursuant to Section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any executory contract or unexpired lease that is assumed; (c) the Reorganized Debtor amending, modifying, or supplementing, after the Confirmation Date, the list of executory contracts or unexpired leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

- Ensure that distributions to holders of allowed claims and interests are accomplished pursuant to the provisions of the Plan;

- Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving any Debtor that may be pending on the Confirmation Date;

- Adjudicate, decide, or resolve any and all matters related to any causes of action held by the Debtor as of the Confirmation Date;

- Adjudicate, decide, or resolve any and all matters related to Section 1141 of the Bankruptcy Code;

- Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and Confirmation Order and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

- Enter and enforce any order for the sale of property pursuant to Sections 363, 1123, or 1146(a) of the Bankruptcy Code;

- Resolve any cases, controversies, suits, disputes, or causes of action that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any person's obligations incurred in connection with the Plan, including but not limited to the obligation of any party to subordinate their debt under the terms of this Plan.

- Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person with consummation or enforcement of the Plan;

- Resolve any cases, controversies, suits, disputes, or causes of action with respect to the releases, injunctions, and other provisions contained in the Plan, and enter such orders as

may be necessary or appropriate to implement such releases, injunctions, and other provisions;

- Resolve any and all cases, controversies, suits, disputes, or causes of action with respect to the repayment or return of distributions and the recovery of additional amounts owed by a holder of a claim for amounts not timely repaid;

- Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

- Adjudicate any and all disputes arising from or relating to payments or distributions under the Plan;

- Consider any and all modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any final order, including the Confirmation Order;

- Hear and determine requests for the payment or distribution on account of claims entitled to priority pursuant to Section 507 of the Bankruptcy Code;

- Hear and determine any and all disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

- Hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code with any tax incurred or alleged to be incurred by any Debtor or Reorganized Debtor a result of consummation of the Plan being considered to be incurred or alleged to be incurred during the administration of these Chapter 11 Cases for purposes of Section 505(b) of the Bankruptcy Code;

- Hear and determine any and all disputes involving the existence, nature, or scope of the Debtor's discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Confirmation Date;

- Determine any other matters that may arise in connection with or relate to the Plan, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan;

- Enforce any orders previously entered by the Bankruptcy Court;

- Hear any and all other matters not inconsistent with the Bankruptcy Code; and

- Enter an order or Final Decree concluding or closing the Chapter 11 Cases.

## G.     Miscellaneous Provisions

1.      <u>Immediate Binding Effect</u>

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Confirmation Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, Liquidating Debtor, and any and all holders of claims or interests (irrespective of whether any such holders of claims or interests did not vote to accept or reject the Plan, voted to accept or reject the Plan, or are deemed to accept or reject the Plan), all persons that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each person acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtor.

{00226875}20

2.      <u>Governing Law</u>

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Michigan, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

3.      <u>Plan Provisions Nonseverable</u>

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (3) nonseverable and mutually dependent.

# VIII. STATUTORY REQUIREMENTS FOR PLAN CONFIRMATION

The following is a brief summary of the plan confirmation process in a proceeding under Chapter 11 of the Bankruptcy Code. Claim and interest holders are encouraged to review the Bankruptcy Code's relevant provisions and to consult their own attorneys.

## A.    The Confirmation Hearing

Bankruptcy Code Section 1128(a) requires the Bankruptcy Court, after notice, to hold a hearing on plan confirmation. Under Bankruptcy Code Section 1128(b), any party in interest may object to plan confirmation. The Court in this case will enter an order setting the confirmation hearing date. The Bankruptcy Court may adjourn the confirmation hearing from time to time without further notice except by announcing the adjournment date at the confirmation hearing or at any subsequent adjourned confirmation hearing.

## B.    Confirmation Standards

To confirm the Plan, the Bankruptcy Court must find that, among other things, the requirements of Bankruptcy Code Section 1129 are satisfied. In summary, these requirements include the following:

1. The Plan complies with all applicable Bankruptcy Code provisions.

2. The Debtor has complied with the applicable Bankruptcy Code provisions.

3. The Plan has been proposed in good faith and not by any means forbidden by law.

4. Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the cases, has been disclosed to the Bankruptcy Court, and any such payment made before Plan Confirmation is reasonable, or if such payment is to be fixed after Confirmation, such payment is subject to Bankruptcy Court approval as reasonable.

{00226875}22

5. With respect to each class of impaired claims or interests, either each claim or interest holder in such class has accepted the Plan or will receive or retain under the Plan on account of such claim or interest, property of a value, as of the Confirmation Date, not less than the amount such holder would receive or retain if the Debtor was liquidated on such date under chapter 7 of the Bankruptcy Code.

6. Each class of claims or interests entitled to vote on the Plan either has accepted the Plan or is not impaired under the Plan, or the Plan can be confirmed without the approval of each voting class under Bankruptcy Code Section 1129(b).

7. Except to the extent a particular claim holder agrees to different treatment, allowed administrative claims and other allowed priority claims will be fully paid on, or as soon as reasonably practical after, the Confirmation Date.

8. At least one class of impaired claims or interests has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a claim or interest in such class.

9. Confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless the liquidation or reorganization is proposed in the Plan.

10. All fees of the type described in 28 U.S.C. § 1930, including the fees of the United States Trustee, will be paid as of the Confirmation Date.

11. The Plan addresses payment of retiree benefits in accordance with Bankruptcy Code Section 1114.

The Debtor believes that the Plan satisfies the requirements of Bankruptcy Code Section 1129, including, without limitation, that (i) the Plan satisfies or will satisfy all of the Bankruptcy

Code's statutory requirements; (ii) the Debtor has complied or will have complied with all of the Bankruptcy Code's requirements; and (iii) the Debtor proposed the Plan in good faith.

**C.     Best Interests of Creditors Test**

Before it can confirm the Plan, the Bankruptcy Court must find (with certain exceptions) that the Plan provides, with respect to each class, that each claim or interest holder in such class either: (a) has accepted the Plan; or (b) will receive or retain under the Plan property of a value, as of the Confirmation Date, not less than the amount that such Person would receive or retain if the Debtor liquidated under Chapter 7 of the Bankruptcy Code.

In Chapter 7 liquidation cases, unsecured creditors and interest holders are generally paid from available assets in the following order, with no junior class receiving any payments until all amounts due to senior classes have been fully paid or any such payment is provided for:

- Secured creditors (to the extent of their collateral's value);
- Administrative and other priority creditors;
- Unsecured creditors;
- Debt expressly subordinated by its terms or by Bankruptcy Court order; and
- Equity interest holders.

As described in more detail in the Liquidation Analysis, the Debtor believes that the value of any distributions in a Chapter 7 case would be less than the value of Plan distributions because, among other reasons, distributions in a Chapter 7 case may not occur for a longer period of time, reducing the distributions' present value. In this regard, it is possible that Chapter 7 distributions could be delayed for a period for a trustee and its professionals to become knowledgeable about the Chapter 11 Cases and the claims against the Debtor. In addition, Chapter 7 distributions are likely to be

{00226875}24

significantly discounted because of the sale's distressed nature, and because the Chapter 7 trustee's and professionals' fees and expenses would likely exceed those of the Debtor's professionals (further reducing cash available for distribution).

**D.    Acceptance by Impaired Classes**

The Bankruptcy Code requires, as a condition to plan confirmation that, except as described in the following Section, each class of impaired claims or equity interests accept the plan. A class not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is "impaired" unless the plan: (a) leaves unaltered the legal, equitable and contractual rights to which the claim or interest entitles the holder of that claim or interest; (b) cures any default and reinstates the original terms of the obligation; or (c) provides that, on the consummation date, the claim or interest holder receives cash equal to the allowed amount of its claim or, with respect to any interest, any fixed liquidation preference to which the interest holder is entitled or any fixed price at which the Debtor may redeem the security.

**E.    Confirmation Without Acceptance by All Impaired Classes**

Bankruptcy Code section 1129(b) allows a Bankruptcy Court to confirm a plan, even if all impaired classes entitled to vote on the plan have not accepted it, provided that the plan has been accepted by at least one impaired class. Bankruptcy Code section 1129(b) states that, notwithstanding an impaired class's failure to accept a plan, the plan shall be confirmed, at the plan proponent's request, in a procedure commonly known as "cram down," so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or interests impaired that is impaired under, and has not accepted, the plan.

{00226875}25

Courts will take into account a number of factors in determining whether a plan discriminates unfairly, including the effect of applicable subordination agreements between parties. Accordingly, a plan could treat two unsecured-creditor classes differently without unfairly discriminating against either class.

The condition that a plan be "fair and equitable" to a non-accepting class of secured claims includes the requirements that: (a) the secured claim holders retain the liens securing their claims for the claims' allowed amount, whether the debtor retains the applicable encumbered property or transfers it to another entity under the plan; and (b) each secured claim holder in the class receives deferred cash payments totaling at least the claims' allowed amount with a present value, as of the plan's effective date, at least equivalent to the value of the secured claimant's interest in the applicable encumbered property.

The condition that a plan be "fair and equitable" with respect to a non-accepting class of unsecured claims requires that either: (a) the plan provides that each claim holder in the class receive or retain property valued, as of the plan's effective date of the plan, equal to the claim's allowed amount; or (b) any claim or interest holder junior to the claims of the class will not receive or retain under the plan any property for the junior claim or equity interest

The condition that a plan be "fair and equitable" to a non-accepting class of equity interests requires that either: (a) the plan provides that each interest holder in the class receives or retains under the plan property of a value, as of the plan's effective date, equal to the greater of (i) the allowed amount of any fixed liquidation preference to which the interest holder is entitled, (if) any fixed redemption price to which the interest Holder is entitled, or (iii) the interest's value; or (b) if the class does not receive such an amount as required under (a), no class of equity-interests junior to the non-accepting class receives a distribution under the plan.

{00226875}26

The Plan provides that if any impaired class rejects the Plan, the Debtor reserves the right to seek to Plan confirmation under Bankruptcy Code Section 1129(b)'s "cram down" provisions. If any impaired class rejects the Plan or is deemed to have rejected the Plan, the Debtor will request Plan confirmation under Bankruptcy Code section 1129(b). The Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan or any Plan exhibit or supplement, including for the purpose of satisfying Bankruptcy Code Section 1129(b)'s requirements, if necessary.

## IX. VOTING INSTRUCTIONS

### A.    Confirmation Generally

The Bankruptcy Court may confirm a plan only if it determines that the plan complies with the requirements of chapter 11 of the Bankruptcy Code. One of these requirements is that the Bankruptcy Court find, among other things, that the plan has been accepted by the requisite votes of all classes of impaired claims and impaired interests unless approval will be sought under Bankruptcy Code Section 1129(b) despite the non-acceptance by one or more such classes.

### B.    Who Can Vote

In general, a claim or interest holder may vote to accept or reject a plan if (i) no party in interest has objected to such claim or interest, and (ii) the claim or interest is impaired by the plan. If the holder of an impaired claim or interest will not receive any distribution under the plan for the claim or interest, the Bankruptcy Code deems such holder to have rejected the plan for that claim or interest. If a claim or interest is not impaired, the Bankruptcy Code deems that the holder of such claim or interest has accepted the plan and the plan proponent need not solicit such holder's vote.

Under Bankruptcy Code Section 1124, a class of claims or interests is deemed to be "impaired" under a plan unless the plan leaves unaltered the claim or interest holder's legal, equitable, and contractual rights, or, notwithstanding any legal right to accelerate payment of such

{00226875}27

claim or interest, the plan cures all existing defaults (other than defaults resulting from the occurrence of bankruptcy events), reinstates the maturity of such claim or interest as it existed before the default, compensates the holder of such claim or interest for any damages incurred as result of reasonable reliance on the holder's legal right to an accelerated payment, and does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest holder is entitled.

Only the following impaired claims in voting classes shall be entitled to vote on the Plan with regard to such claims:

1. Holders of claims for which proofs of claim have been timely filed, as reflected on the claims register,

2. Holders of claims that are listed in the Debtor's schedules, with the exception of those claims that are listed in the schedules as contingent, unliquidated, and/or disputed (excluding such claims listed in the Debtor's Schedules that have been superseded by a timely filed Proof of Claim); and

3. Holders whose claims arise pursuant to an agreement or settlement with the Debtor as reflected in a document filed with the Bankruptcy Court, in an order of the Bankruptcy Court, or in a document executed by the Debtor pursuant to authority granted by the Bankruptcy Court, regardless of whether a proof of claim has been filed.

The assignee of a transferred and assigned claim (whether a timely-filed claim or a claim on the schedules) shall be permitted to vote such claim only if (i) the transfer or assignment has been fully effected under the procedures dictated by Bankruptcy Rule 3001(e) and (ii) such transferor and assignor of such claim would be permitted to vote such claim if such transfer and assignment had not occurred.

{00226875}28

For purposes of determining the claim amount associated with each holder's vote, such amount shall include applicable interest accrued after the Petition Date only if the claim Holder is entitled to payment of interest under the Plan.

A vote may be disregarded under Bankruptcy Code Section 1126(e) if the Bankruptcy Court determines that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

## C.   Establishing Claim Amounts

In tabulating votes, the following hierarchy will be used to determine the claim amount associated with each creditor's vote:

1) The claim's allowed amount, if the claim has been allowed pursuant to Court order;

2) The claim amount settled and/or agreed upon by the Debtor, as reflected in a court pleading, stipulation, term sheet, agreement, or other document filed with the Bankruptcy Court, in an order entered by the Bankruptcy Court, or in a document executed by the Debtor pursuant to authority granted by the Bankruptcy Court, regardless of whether a proof of claim has been filed;

3) The claim amount contained on a proof of claim that has been timely filed by the relevant bar date (or deemed timely filed by the Bankruptcy Court under applicable law) to the extent the claim has not been objected to prior to the confirmation hearing date; provided, however, that ballots cast by holders whose claims are not listed on the Debtor's schedules, but who timely filed proofs of claim in unliquidated or unknown amounts that are not the subject of an objection filed before the voting deadline, will count for satisfying the numerosity requirement of Section 1126(c) of the Bankruptcy Code, and the unliquidated or unknown portion of the Claims will count in the amount of $1.00 solely for the purposes of satisfying

{00226875}29

the dollar amount provisions of Section 1126(c) of the Bankruptcy Code;

4) The claim amount listed in the Debtor's schedules, provided that such claim is not scheduled as contingent, disputed, and/or unliquidated and has not been paid.

5) In the absence of any of the foregoing, at zero.

The claim amount established pursuant to the foregoing will control for voting purposes only, and will not be determinative of the allowed amount of any claim.

**D.     Ballot Tabulation**

The following voting procedures and standard assumptions shall be used in tabulating ballots:

1)     Unless a ballot being furnished is timely submitted on or prior to the voting deadline, the Debtor may reject such ballot as invalid and, therefore, decline to count it in connection with confirmation;

2)     The method of delivery of ballots to be sent to Debtor's counsel is at the election and risk of each holder, and except as otherwise provided, a ballot will be deemed delivered only when Debtor's counsel actually receives the original executed ballot;

3)     An original executed ballot is required to be submitted by the person submitting such ballot;

4)     The Debtor expressly reserves the right to amend from time to time the terms of the Plan in accordance with the terms thereof (subject to compliance with the requirements of Section 1127 of the Bankruptcy Code and the terms of the Plan regarding modification);

5)     If multiple ballots are received from the same claim holder with respect to the same claim prior to the voting deadline, the latest valid ballot will be deemed to reflect that voter's intent and will supersede and revoke any prior received ballot for the same claim;

{00226875}30

6)      Claim holders must vote all of their claims within a particular class either to accept or to reject the Plan and may not split such votes.  Accordingly, a ballot that partially rejects and partially accepts the Plan will not be counted.  Further, to the extent there are multiple claims within the same class, the Debtor may, in its sole discretion, aggregate the claims of any particular holder within a class for the purpose of counting votes;

7)      A person signing a ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity should indicate such capacity when signing and must submit proper evidence to the requesting party to so act on behalf of such holder or beneficial holder;

8)      The Debtor, subject to contrary order of the Bankruptcy Court, may waive any defects or irregularities as to any particular ballot at any time, either before or after the voting deadline, and any such waivers will be documented in the voting report;

9)      Neither the Debtor nor any other person, will be under any duty to provide notification of defects or irregularities with respect to delivered ballots other than as provided in the voting report, nor will any of them incur any liability for failure to provide such notification;

10)     Unless waived or as ordered by the Bankruptcy Court, any defects or irregularities in connection with deliveries of ballots must be cured prior to the voting deadline or such ballots will not be counted;

11)     If a claim is listed in the schedules as being a non-priority claim (or is not listed in the schedules) and a proof of claim is filed as a priority claim (in whole or in part), such claim will be temporarily allowed for voting purposes as a non-priority claim in an amount that such claim would have been so allowed had such proof of claim been filed as a non-priority claim;

12)     If a claim is listed in the schedules as being an unsecured claim (or is not listed in the

{00226875}31

schedules) and a proof of claim is filed as a secured claim (in whole or in part), such claim will be temporarily allowed for voting purposes as an unsecured claim in an amount that such claim would have been so allowed had such proof of claim been filed as an unsecured claim.

13)     Subject to any contrary order of the Bankruptcy Court, the Debtor reserves the right to reject any and all ballots not in proper form, the acceptance of which, in the opinion of the Debtor, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; provided, however, that any such rejections will be documented in the voting report;

14)     If a claim has been estimated or otherwise allowed for voting purposes only by an order of the Bankruptcy Court, such claim shall be temporarily allowed in the amount so estimated or allowed by the Bankruptcy Court for voting purposes only and not for purposes of allowance or distribution;

15)     The following ballots shall not be counted in determining the acceptance or rejection of the Plan: (i) any ballot that is illegible or contains insufficient information to permit the identification of the claim holder; (ii) any ballot cast by a person that does not hold a claim in a class that is entitled to vote on the Plan; (iii) any ballot cast for a claim listed on the Debtor's schedules as contingent, unliquidated, and/or disputed for which no proof of claim was timely filed; (iv) any unsigned ballot or one lacking an original signature; and (v) any ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan.

LAMBERT LESER

/s/ Keith A. Schofner

Dated:  May 1, 2014.        BY:    _____

KEITH A. SCHOFNER(P41852)
Attorneys for Debtor
P.O. Box 835
Bay City, MI 48707-0835
Phone: (989) 893-3518
kschofner@lambertleser.com
{00226875}32

# Exhibit "A"

B6B (Official Form 6B) (12/07)

In re **Alpena Collision Service, Inc.**

Case No. **13-21731**

Debtor

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."
If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| | Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|---|
| 1. | Cash on hand | X | | | |
| 2. | Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | Checking with Besser Credit Union Savings with PNC Bank | - | 762.00 |
| 3. | Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. | Household goods and furnishings, including audio, video, and computer equipment. | X | | | |
| 5. | Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. | Wearing apparel. | X | | | |
| 7. | Furs and jewelry. | X | | | |
| 8. | Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. | Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | Alpena Agency 2nd Street Alpena MI 49707 | - | Unknown |
| 10. | Annuities. Itemize and name each issuer. | X | | | |

| | | Sub-Total > (Total of this page) | 762.00 |
|---|---|---|---|

<u>3</u>   continuation sheets attached to the Schedule of Personal Property

Schwara Copyright (c) 1996-2013 - CCH INCORPORATED - www.bestcase.com                           Best Case Bankruptcy

In re __Alpena Collision Service, Inc.__                    Case No. ___13-21731___
                                    Debtor

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | | **Schwann Ice Cream; misc. individuals and insurance** | - | 9,988.38 |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |

|  | Sub-Total > | 9,988.38 |
|---|---|---|
|  | (Total of this page) | |

Sheet __1__ of __3__ continuation sheets attached
to the Schedule of Personal Property

Software Copyright (c) 1996-2013 - CCH INCORPORATED - www.bestcase.com                    Best Case Bankruptcy

In re **Alpena Collision Service, Inc.**                              Case No. ___**13-21731**___
_____
                    Debtor

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | 1990 GMC Flatbed $19,000; 1989 GMC Wrecker $5,000; 1989 International Wrecker $10,000; 2011 Chevrolet Impala $13,000; 2012 Chevrolet Impala $14,000; 2011 Chevrolet Impala $13,000; 2011 CHevrolet Malibu $13,000; 1985 Jeep with plow $1,000; | - | 88,000.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | Fax, copier, desk computer complete, credit card machine, 3 office phnones, 3 calculators; customers seats 3, customer radio, customers table, plants (tree) waiting room, model car collection, antique car parts, anitque sign, office cleaing supplies | - | 8,590.00 |
| 29. Machinery, fixtures, equipment, and supplies used in business. | | 2 tool boxes and tools, frame and alignment rackzs and equipment, 3 lifts, 4 welders, 2 compressors, tire changer, tire balancer, tire cage, tank inflator, MAC charger, MAC charger HD, portable charger, Paint room and booth lightning, fan, bake heater, mixer, paint shaker, vaccum HD, vaccum light and misc. parts in storage room | - | 93,300.00 |
| 30. Inventory. | | 60 used tries | - | 780.00 |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |

Sub-Total >          190,670.00
(Total of this page)

Sheet  __2__  of  __3__  continuation sheets attached
to the Schedule of Personal Property

Software Copyright (c) 1996-2013 - CCH INCORPORATED - www.bestcase.com                    Best Case Bankruptcy

In re   **Alpena Collision Service, Inc.**                                    Case No. ____**13-21731**_____
_____
                                    **Debtor**

## SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

|  | Sub-Total > | 0.00 |
|---|---|---|
|  | (Total of this page) |  |
|  | Total > | 201,420.38 |

Sheet  **3**  of  **3**  continuation sheets attached
to the Schedule of Personal Property                                    (Report also on Summary of Schedules)

Software Copyright (c) 1996-2013 - CCH INCORPORATED - www.bestcase.com                                    Best Case Bankruptcy

13-21731     Doc 14     Filed 07/10/13     Entered 07/10/13 10:47:04     Page 36 of 41
13-21731-dob     Doc 82     Filed 05/01/14     Entered 05/01/14 16:03:09     Page 37 of 41

# Exhibit "B"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION-BAY CITY

In Re:

Alpena Collision Service, Inc.,

    Debtor.

Case No. 13-21731-dob
Chapter 11 Proceedings
Honorable Daniel Opperman

_____/

## CERTIFICATE OF SERVICE

I hereby certify that I am employed with the law offices of LAMBERT LESER and that on May 1, 2014 a copy of Debtor's Combined Chapter 11 Plan and Disclosure Statement was served by mailing this document by U.S. Postal Service via first-class mail to ALL CREDITORS AND INTERESTED PARTIES LISTED ON THE MATRIX ON FILE WITH THIS COURT and by ECF Filing with the Court.

LAMBERT LESER

Dated: May 1, 2014.

/s/ Melissa Pugh
_____
MELISSA PUGH, Legal Assistant to
KEITH A. SCHOFNER (P41852)
Attorney for Debtor
916 Washington Avenue, Ste. 309
Bay City, Michigan 48708
(989) 893-3518
mpugh@lambertleser.com

Label Matrix for local noticing
0645-1
Case 13-21731-dob
Eastern District of Michigan
Bay City
Thu May  1 15:58:12 EDT 2014

Alpena Collision Service, Inc.
249 N. Ripley Street
Alpena, MI 49707-2925

Alternative Recovery Management
8204 Parkway Drive
Le Mesa, CA 91942-2407

Attorney General
Law Building
515 Ottawa
Lansing, MI 48913-0001

BW & US Tax Office
3024 W. Grand Blvd.,Ste 11-500
Detroit, MI 48202-6024

Julia A. Caroff
211 West Fort St.
Ste. 2001
Detroit, MI 48226-3220

First National Bank of Michigan
348 W. Michigan Avenue
Kalamazoo, MI 49007-3755

Fred Levely
34602 Woodward Avenue
Birmingham, MI 48009-0924

Moe Freedman
3030 W. Grand Blvd.
Ste. 10-200
Detroit, MI 48202-6030

Frontier
PO Box 2951
Phoenix, AZ 85062-2951

(p)FRONTIER COMMUNICATIONS
BANKRUPTCY DEPT
19 JOHN STREET
MIDDLETOWN NY 10940-4918

Hibu Inc f/k/a Yellowbook Inc
c/o RMS Bankruptcy Recovery Services
P.O. Box 5126
Timonium, MD 21094-5126

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Ryan K. Kauffman
124 W. Allegan
Suite 1000
Lansing, MI 48933-1716

MESC
P.O. Box 33598
Detroit, MI 48232-5598

Michigan Department of Treasury
Bankruptcy Unit
PO Box 30168
Lansing, MI 48909-7668
517-241-5002

Michigan Dept. of Treasury
Collection/Bankruptcy Unit
P.O. Box 30168
Lansing, MI 48909-7668

Michigan Unemployment Agency
P.O. Box 169
Grand Rapids, MI 49501-0169

R & S Auto
P.O Box 665
Mancelona, MI 49659-0665

R&S Auto
231 W. Leanard Road
Mancelona, MI 49659-8735

Gary C. Rogers
124 W. Allegan, Ste. 1000
Lansing, MI 48933-1716

Rose Acceptance, Inc.
P.O. Box 980
East Lansing, MI 48826-0980

Rose Acceptance, Inc.
241 E Saginaw
East Lansing, MI 48823-2792

Amy L. Rosenberg
Labor Division
G. Mennen Williams Bldg, 5th Floor
P.O. Box 30736
Lansing, MI 48909-8236

Keith A. Schofner
916 Washington Ave.
Suite 309
Bay City, MI 48708-5723

State of Michigan
Dept. of Treasury
PO Box 30199
Lansing, MI 48909-7699

State of Michigan
Unemployment Insurance Agency
Tax Office, POC Unit, Ste 11-500
3024 W. Grand Blvd
Detroit MI 48202-6024

State of Michigan Department of Treasury
Attorney General
Cadillac Place, 10th Floor
3030 W. Grand Blvd, Ste 10-200
Detroit, MI 48202-6030

U.S. Attorney
Attn: Civil Department
101 First Street, Suite 200
Bay City, MI 48708-5747

United States of America (IRS)
United States Attorney
211 W. Fort Street
Suite 2001
Detroit, MI 48226-3220

Donna K. Welch
3030 W. Grand Blvd.
Suite 9600
Detroit, MI 48202-6030

Yellow Book
6300 C Street
Cedar Rapids, IA 52404-7470

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Frontier Communications
Bankruptcy Dept
19 John St
Middletown, NY 10940

IRS
P.O. Box 330500, M/S 15
Detroit, MI 48232-6500

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Rose Acceptance, Inc.
P.O. Box 980
East Lansing, MI  48826-0980

(u)State of Michigan, Department of Licensing

End of Label Matrix
Mailable recipients    32
Bypassed recipients     2
Total                  34